Filed 1/30/25  In re S.T. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re S.T. et al., Persons Coming Under the Juvenile Court Law. | B334924 (Los Angeles County Super. Ct. No. 22CCJP01020) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br> A.A.,<br><br>        Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed with directions.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

————————————

This appeal involves mother's claims the juvenile court committed the following reversible errors:  (1) It should not have terminated jurisdiction at the Welfare and Institutions[1] Code section 364 hearing because substantial evidence demonstrated circumstances requiring continued jurisdiction; (2) it abused its discretion in not giving mother joint legal custody with father over their children, S.T. and A.T.; and (3) it abused its discretion in not giving mother overnight visitation.

Mother misconceives our standard of review of a court's termination of dependency jurisdiction at a section 364 hearing. Because she had the burden of proof below to show that continued jurisdiction was necessary and failed to meet that burden, to demonstrate error on appeal she must show that as a matter of law, the evidence compelled a finding in her favor. (*In re J.M.* (2023) 89 Cal.App.5th 95, 111.)  She has failed to make that showing.

The juvenile court did not abuse its discretion in denying mother overnight visitation.  There was evidence below that mother used cocaine during the reunification period, and when under the influence of cocaine, had difficulty controlling her impulses.

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

Finally, as reflected in the transcript of proceedings and the juvenile court's minute order, the court did award mother joint legal custody, although the final custody order does not so reflect. We thus remand solely for the purpose of allowing the juvenile court to correct the judgment to reflect joint legal custody. In all other respects, we affirm.

## BACKGROUND

Mother A.A. and father have two children, S.T. (born in 2016) and A.T. (born in 2018). Father also has two children with J.W.[2] Prior to the dependency proceedings, mother and father were involved in numerous domestic disputes, and each called law enforcement.

During the dependency proceedings, S.T. and A.T. lived with maternal grandmother until they moved in with father.

1. ***The court sustains the section 300 petition***

DCFS filed a petition on March 18, 2022 under section 300, subdivisions (a), (b)(1), and (j).

As later sustained, DCFS alleged that mother and father "have a history of engaging in violent physical altercations. On or about 02/02/2022, the father choked the mother with the father's hands, in the presence of the children. The father attempted to strike the mother with the father's fist. The father threw objects towards the mother. The father struck and forcibly pushed the mother. The father broke down a door in the

---

[2] Father and J.W.'s children were declared dependents of the juvenile court in 2019. In February 2022, the juvenile court terminated dependency jurisdiction and awarded J.W. sole legal and physical custody of her children with father.

3

children's home, while the mother and children were in the room. The father took the mother's phone when the mother attempted to call law enforcement. The violent altercation resulted in the mother sustaining injuries to the mother's neck and knee, bruises to the mother's body and lacerations to the mother's face, chest, arms and legs. The father was arrested for . . . intimate partner violence. On 1/1/2021, the father shoved and struck the mother. On a prior occasion, the father forcibly threw a cellular phone towards the mother, inflicting a bruise to the mother's eye. On prior occasions, the mother and father engaged in domestic violence. The children's paternal half-siblings . . . are prior dependents of the juvenile court due to the father's violent conduct against the half-siblings' mother. The violent conduct by the father against the mother, endangers the children's physical health and safety, creates a detrimental home environment and places the children at risk of serious physical harm, damage and danger." (Capitalization omitted.)

DCFS further alleged father "has a history and is a current abuser of alcohol and marijuana, which renders the father incapable of providing the children with regular care and supervision. On 2/25/2022, the father had a positive toxicology screen for marijuana. On or about 02/02/2022 and prior occasions, the father was under the influence of alcohol, while the children were in the father's care and supervision. The children are of such a young age requiring constant care and supervision and the father's substance abuse interferes with the father's ability to provide regular care and supervision of the children. The father has a history of a criminal conviction for" driving under the influence, and his substance abuse "endangers the

4

children's physical health and safety and places the children at risk of serious physical harm, damage, [and] danger."

Social workers interviewed mother, father, and S.T. Mother and father each blamed the other for the domestic violence. S.T. described mother and father as having " 'a thousand fights.' " Father admitted using marijuana once or twice a month to alleviate insomnia, backaches, joint pain, and anxiety. Father reported he had "slowed down [his] drinking" and did not drink and drive. Father also reported mother used cocaine, which mother denied. She claimed, "I don't use cocaine at all." Mother told the social worker father abused her causing cuts on her knee, neck, and face as well as bruises on her arms. Mother reported father drank alcohol when he felt stress.

In May 2022, mother pleaded no contest to the section 300 petition, and the juvenile court sustained all allegations against father and assumed jurisdiction over the children. The juvenile court removed the children from their parents' custody and placed them with maternal grandmother. The court ordered mother to randomly test for controlled substances, attend domestic violence and parenting classes, and individual counseling. The court ordered father to participate in the following: drug and alcohol programs and random drug testing, 52-week domestic violence class, parenting class, and individual counseling. The court ordered monitored visitation for both parents. The court ordered DCFS to provide family reunification services for both parents.

## 2. *The court sustains a section 342 petition regarding mother's conduct*

On September 8, 2022, DCFS filed a section 342 petition.[3] DCFS alleged that mother has a history of substance abuse and currently abused cocaine and marijuana which rendered her incapable of providing S.T. and A.T. with regular care and supervision. On August 25, 2022, mother tested positive for cocaine and marijuana. The section 342 petition contained no allegations against father.

In October 2022, the juvenile court sustained the allegations in the section 342 petition. The court ordered mother to participate in a substance abuse program with random testing and a 12-step program.

## 3. *Father's conduct during the reunification period*

In September 2022, DCFS reported father tested positive for marijuana in February 2022 and in August 2022. He missed 16 tests scheduled from April 2022 through August 2022. Father enrolled in domestic violence and parenting classes and was put on a wait list for individual counseling. In September 2022, DCFS also reported the children enjoyed visiting with father.

---

[3] Section 342, subdivision (a) provides: "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition. This section does not apply if the jurisdiction of the juvenile court has been terminated prior to the new allegations."

In November 2022, DCFS reported father missed all his drug tests in September and October. DCFS indicated that when a social worker asked father about his missed tests, father stated he did not know how to test and was having difficulty working and "juggl[ing]" all of his services. Father was attending domestic violence and parenting classes and recently moved off a wait list for individual counseling.

In its November 28, 2022 report, DCFS reported father was partially compliant with his case plan. Father continued domestic violence classes and also took anger management classes. Father consistently visited the children, and the social worker "observed no child safety issues with father as father is very hands on with the children and he observes when the children [are] at risk[,] . . . he redirects them away from [the risk]." According to the social worker, father responded appropriately, patiently, and lovingly towards the children. Father bonded with the children and was "making an effort to drug test." Father began therapy and reported it was helping him.

In January 2023, the court allowed father unmonitored visits in addition to his monitored visits. In other words, some of father's visits were monitored and some were unmonitored. In February 2023, DCFS requested the juvenile court order father's visits monitored because father had tested positive for marijuana on January 30, 2023. DCFS reported father refused to work with the social worker because he believed DCFS showed favoritism toward mother. In March 2023, the juvenile court ordered father's visits monitored.

In June 2023, father told a social worker that he lived with his aunt and worked several jobs to support the children. Father

7

stated he was ready to have the children placed in his custody and changed his work schedule to make it easier to care for them.

In June 2023, DCFS also reported father tested positive for marijuana once in January 2023 and tested negative for all substances 16 times between February 2023 and May 2023. Father missed one test in April and one test in May. DCFS's June 2023 report indicated father had completed parenting, domestic violence, and anger management programs. Father engaged in individual therapy and according to the therapist, father was consistent with his therapy. Although father initially was reluctant to participate in a drug program, he enrolled after finding a program that would also allow him to work and spend time with the children.

DCFS's June 2023 report indicated that a month earlier, DCFS had liberalized father's visits to unmonitored. DCFS opined the children would be safe in father's home if father continued to receive services. DCFS reported father "has provided for [the] children and . . . . has been working to ensure extra shifts at the many jobs that he currently has so that he is able to provide financially for his household . . . ." The social worker concluded father improved his parenting skills, and father believed he had as well. DCFS recommended the juvenile court terminate its jurisdiction and place the children in father's home.

On June 9, 2023, the social worker received certificates showing father completed parenting, domestic violence, and anger management programs. DCFS allowed father to have an overnight visit and father reported he planned to purchase bunk beds for the children. Maternal grandmother reported the children were fine after the overnight visit with father.

On June 21, 2023, the juvenile court ordered the children placed in father's home. The court found father had made substantial progress towards mitigating the circumstances that had initially led to the children being placed outside his care. The court found placing the children in father's care "would not create a substantial risk of detriment to the safety, protection, or physical or emotional well-being" of the children. S.T. told the social worker he "is doing good" in father's home. S.T. said he felt safe and comfortable in father's home and never saw father drink alcohol or smoke. A.T. also reported feeling safe and comfortable with father and said, "she loves her dad and that she misses her mother."

In December 2023, DCFS reported the children were still living with father and doing well. The social worker observed that father and S.T. had "open communication." DCFS reported father "missed some of his drug tests" because he was "involved with the children's education, searching for consistent employment and maintaining the children's visitation schedule with their mother . . . ." From the beginning of July through the end of November, father tested negative for controlled substances 17 times. He missed eight tests in the same time period. According to DCFS, father enjoyed having the children in his home and developed daily routines for them. DCFS reported that father loved the children and the children loved him.

## 4. *Mother's conduct during the reunification period*

In August 2022, maternal grandmother reported mother was under the influence of a substance in front of the children. S.T. told maternal grandmother to keep the door locked to stop mother from hurting maternal grandmother.

Mother acknowledged her cocaine use on August 26, 2022, and she told the social worker she had been using cocaine once or twice weekly for a year. That same day mother tested positive for cocaine. Three days later mother entered an in-patient substance abuse clinic. The social worker expressed concern about "mother's ongoing substance abuse and the aggression" she displays when under the influence. DCFS also reported the children were bonded to mother.

In October 2022, DCFS reported mother admitted that she had been using cocaine on the weekends and sometimes during the week. Mother informed a social worker that after drinking alcohol, she would snort cocaine. Mother explained she was "dancing to pay off [her] DUI and that's where" she started using cocaine. Mother asked for a referral to an in-patient drug treatment program. Father told the social worker he first noticed mother using cocaine in 2016.

In November 2022, DCFS reported that in connection with her in-patient program, mother was taking parenting classes, enrolled in a 12-step program, and engaged in therapy. Maternal grandmother reported mother was bonded with the children. Mother had not used cocaine since her admittance to the in-patient program. Mother consistently visited the children and showed an understanding of child development.

On January 7, 2023, mother's therapist diagnosed mother with severe cocaine use disorder. According to the therapist, mother had difficulty controlling impulsive behavior. Mother disagreed that she had severe cocaine disorder. On January 11, 2023, the court allowed mother unmonitored visitation.

In June 2023, DCFS reported mother had relapsed. Mother admitted using cocaine and drinking alcohol. Mother said she

left an outpatient program because she was going to school and working. Mother stated, "[F]ather is a great father and takes great care of the kids" and mother would like the children to be placed with father. Mother indicated she could not "take on th[e] responsibility of [her] children, go to work, go to school," and participate in the court-ordered programs. Mother wanted to return to an in-patient or out-patient program. Mother entered a program but was discharged for breaking the program's rules.

DCFS reported mother continued visiting the children without a monitor but stopped testing for controlled substances. In May 2023, mother admitted she had relapsed and was using cocaine and alcohol. On June 20, 2023, DCFS filed a request to change a court order asking the court to order mother's visits monitored. DCFS repeated that mother was discharged from her drug treatment program.

On June 27, 2023, maternal grandmother told the social worker mother was in a "drug induced slumber." Maternal grandmother stated, "If she gets belligerent or breaks windows, as she has done, I'm having her arrested." Maternal grandmother stated that "[h]opefully the Father can keep [the children] long term, because right now, their mother can be no good to them, aside for visits."

On June 28, 2023, mother told a social worker that she was being admitted into an in-patient drug treatment program. A July 25, 2023 letter from the treatment facility indicated mother's random drug tests were negative.

On July 26, 2023, the court ordered mother's visits monitored. In November 2023, mother was living in a "sober living home." Effective December 9, 2023, mother was permitted unmonitored visits. In December 2023, DCFS reported that the

11

children enjoy their visits with mother. DCFS stated, "[M]other loves her children and the children love mother." Mother tested negative for controlled substances from July 2023 through November 2023.

5. ***In its section 364 report, DCFS recommended terminating jurisdiction; after a section 364 review hearing, the juvenile court terminated jurisdiction***

On June 21, 2023, when the juvenile court ordered the children placed in father's custody, the court continued the matter for review pursuant to section 364 in December 2023. In its December 2023 report, DCFS recommended the court terminate jurisdiction. DCFS further recommended mother and father have joint legal custody and father sole physical custody.

At a hearing on December 20, 2023, no witness testified.[4] Mother's counsel and the children's counsel requested the court continue jurisdiction. The children's counsel asked the juvenile court to retain jurisdiction because counsel was "not comfortable with overnight" visits by mother at that time and the children "would like overnights with their mother . . . ." Mother's counsel argued that continued jurisdiction would give her "more time with the children in the form of overnight visits." Mother's counsel also requested that if the court terminate jurisdiction, it award her joint legal custody and overnight visits.

---

[4] The court excluded mother's letter from a parenting instructor and program director at the sober living house where mother was living. The court found the letter was hearsay and its description of mother's "wonderfulness" was essentially irrelevant. On appeal, mother does not argue the court erred in excluding the evidence.

Father's counsel argued the children were residing with father and have been safe in his care. DCFS's counsel requested the court close the case with the parents having joint legal custody and father having physical custody. DCFS acknowledged that mother had made progress but was not ready yet for overnight visits. DCFS argued there were no safety concerns for the children in father's care.

The court found the conditions that had justified the initial assumption of jurisdiction no longer existed and did not appear likely to exist if supervision is withdrawn. "Therefore, continued jurisdiction of these children is no longer necessary" and the court terminated its jurisdiction with a "juvenile court final exit order giving the parents joint legal, sole physical [custody] to the father, unmonitored day[ visits] for the mother."

The juvenile court's minute orders recite that the court awarded mother and father joint legal custody. The juvenile court's final judgment, however, does not include a check in the form allowing the parents "share joint legal custody . . . ."

## DISCUSSION

### A. Mother's Claim That Substantial Evidence Would Have Supported Continued Jurisdiction Demonstrates No Error

Mother argues that the juvenile court erred in terminating dependency jurisdiction at the section 364 hearing because "substantial evidence supported conditions existed which would justify initial assumption of jurisdiction over the children, and those conditions were likely to exist if supervision was withdrawn." Mother's argument is based on an incorrect standard of review.

13

Section 364 governs status review hearings for dependent juveniles who are not removed from a parent's home or who are returned to a parent. (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 110.) "At a section 364 hearing, 'the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless [DCFS] establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction . . . or that those conditions are likely to exist if supervision is withdrawn.' (§ 364, subd. (c).) Thus, '[w]here, as here, the social services agency recommends termination of jurisdiction, termination will be the "default result" unless either the parent, the guardian, or the child objects and establishes by a preponderance of the evidence that conditions justifying retention of jurisdiction exist or are likely to exist if supervision is withdrawn.' [Citation.]" (*In re J.M.*, *supra*, at pp. 110–111.)

Because mother had the burden of proof below to show retained jurisdiction was necessary, we review whether the evidence " 'compels a finding in favor of the appellant as a matter of law[.]' " (*In re J.M.*, *supra*, 89 Cal.App.5th at p.111, quoting *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, overruled in part on other grounds as stated in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn.7.) The record does not support such a finding.

The dependency proceedings commenced because of domestic violence and father's marijuana use. Father reported he stopped using and consistently tested negative for controlled substances for several months before the juvenile court terminated jurisdiction. Additionally, there was no domestic violence between mother and father after father began

14

reunification services. Father completed a 52-week domestic violence program and parenting classes and had enrolled in individual counseling. Mother reported father was a good father to the children and a social worker observed father capably parenting the children and noted the children had structure and loved father. Significantly, the children were safe in father's care for several months prior to the juvenile court's termination of its jurisdiction. Given these facts, mother cannot demonstrate as a matter of law that the juvenile court was required to continue its jurisdiction.[5]

**B.      Mother Fails To Show the Juvenile Court Abused its Discretion In Denying Overnight Visitation**

Mother argues the evidence showed that she "was ready for, and it was in the best interest of the children, for the juvenile court to grant overnight visitation for mother."

In issuing custody orders, the overarching factor is what custody arrangements are in the best interest of the child. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206.) " '[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case [citation].' [Citation.] . . . We will not disturb the juvenile court's decision ' " 'unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' [Citation.]" (*In re J.M.*, *supra*, 89 Cal.App.5th

_____

[5] Respondent argues that this court should review the juvenile court's order for substantial evidence. Although that argument fails to acknowledge mother's burden of proof, the evidence we have described constitutes substantial evidence to support the juvenile court's order.

at pp. 112–113.) In reviewing an order for abuse of discretion, we " 'must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling.' " (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067, superseded on other grounds by statute, as stated in *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023.)

The evidence viewed in the light favorable to the juvenile court's order demonstrates mother (1) eventually sought treatment but thereafter relapsed; (2) was discharged from a drug treatment program for failing to follow the rules; and (3) was living in a sober house at the time the juvenile court terminated jurisdiction. Mother's therapist diagnosed her with severe cocaine addiction and questioned mother's impulse control. Maternal grandmother reported mother was under the influence in front of the children. A social worker described mother as aggressive when she was under the influence of a controlled substance. Mother's drug use and lack of impulse control supported the juvenile court's exercise of its discretion not to allow mother overnight visits.

## C. The Final Custody Order Must Be Corrected To Reflect Joint Legal Custody

Mother argues the juvenile court abused its discretion in denying her joint legal custody. In fact, the juvenile court awarded mother joint legal custody as reflected in the court's statements at the hearing and its minute order. On the other hand, the final custody order incorrectly fails to provide for joint legal custody; it can be corrected upon remand.[6] (*In re*

---

[6] Respondent agrees that the final custody order should be corrected to reflect joint legal custody.

*Candelario* (1970) 3 Cal.3d 702, 705 ["a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts"]; see also *People v. Little* (1993) 19 Cal.App.4th 449, 452 [clerical error can be corrected at any time].)

## DISPOSITION

The juvenile court's final judgment is affirmed with directions. The case is remanded to the juvenile court to correct its judgment to reflect that mother and father share joint legal custody of S.T. and A.T.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

M. KIM, J.

17